**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Residential Funding Company, LLC,

Plaintiff,

v.

Stearns Lending, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 13-3516 ADM/JJK

---

Donald G. Heeman, Esq., Jessica J. Nelson, Esq., Felhaber Larson, Minneapolis, MN; Peter E. Calamari, Esq., David Elsberg, Esq., Isaac Nesser, Esq., Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; and Jeffrey A. Lipps, Esq., Carpenter Lipps & Leland LLP, Columbus, OH, on behalf of Plaintiff.

Andre T. Hanson, Esq., Allison Lange Garrison, Esq., Robert J. Pratte, Esq., and Margaret Rudolph, Esq., Fulbright & Jaworski LLP, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Stearns Lending, Inc.'s ("Stearns") Motion to Dismiss the complaint filed against it by Plaintiff Residential Funding Company, LLC ("RFC"). In light of this court's ruling in similar cases RFC initiated against other defendants, the parties agreed to cancel the scheduled hearing and submit the issue to the Court based on the parties' briefs.[1] See Letter to Distr. Judge, Aug. 19, 2014 [Docket No. 52]. For the reasons stated below, Defendant's motion is denied.

---

[1] The Court denied motions to dismiss in Residential Funding Company, LLC v. Broadview Mortgage Corp., Court File No. 13-CV-3463 (ADM/SER); Residential Funding Company, LLC v. Central Pacific Homeloans, Inc., et al., Court File No. 13-CV-3476 (ADM/JSM); Residential Funding Company, LLC v. First Equity Mortgage Bankers, Court File No. 13-CV-3473 (ADM/TNL); Residential Funding Company, LLC v. Lenox Financial Mortgage Corp., Court File No. 13-CV-3495 (ADM/FLN); and, Residential Funding Company, LLC v. National Bank of Kansas City, Court File No. 13-CV-3528 (ADM/TNL).

## II.  BACKGROUND

Before it declared bankruptcy in May 2012, RFC was "in the business" of buying and securitizing residential mortgage loans.  RFC purchased these mortgage loans from various "correspondent lenders," including Stearns, who had primary responsibility for underwriting the loans.  RFC then "pooled" loans with similar characteristics together, and sold the bundled loans into securitization trusts.  The loans served as collateral for the trusts' securitized investments (commonly referred to as "residential mortgage-backed securities" or "RMBSs").  RFC sold the RMBSs to investors, and it also occasionally sold pooled loans to "whole loan" investors.  Am. Compl. [Docket No. 30] ¶¶ 21-22.

Stearns is a California corporation with its principal place of business in Santa Ana, California.  Over the course of their relationship, RFC purchased "over 300" mortgage loans from Stearns, with an original principal balance in excess of $80 million.  Id. ¶¶ 4, 14.  Stearns sold its first mortgage loan to RFC in 1998, and the last in 2007.  Id. Ex. C.

Stearns sold mortgage loans to RFC in accordance with a Client Contract, which in turn incorporated a "Client Guide."  Id. Exs. A-B.  RFC contends the applicable Client Contract and Client Guide have the same material terms concerning loan quality.  Id. ¶ 18.  Through the Client Guide, Stearns made numerous representations and warranties to RFC regarding the residential loans it sold.  Among other representations, Stearns agreed it had: verified the accuracy of the information used by borrowers to obtain the loans; ensured the proper completion and execution of loan forms; complied with applicable laws; determined that no default or other breach of loan terms had occurred in any loan; confirmed the market value of the mortgaged property; and not sold any "high-risk" loans to RFC.  Id. ¶ 24.  Stearns further stated that none of loans sold were

based on borrower or lender misrepresentations or fraud.  Id.

The Client Guide provides RFC with broad remedies.  The Client Guide states that any failure by Stearns to comply with the representations and warranties made will result in an "Event of Default."  Similarly, any failure by a borrower, appraiser, broker, or other intermediary to provide accurate information is an "Event of Default," regardless of whether Stearns knew of the misrepresentation.  Id. ¶¶ 26-27.  RFC reserved the sole right to declare an Event of Default, upon which RFC could require the lender to repurchase or replace the loan.  Id. ¶¶ 29-30.  The Client Guide also granted RFC indemnification for any liability resulting from a lender's breach.  Stearns agreed to indemnify RFC for all losses, damages, or other costs resulting from any breach of contract, breach of warranty, or misrepresentation.  Id. ¶ 33.

Many of the loans sold by Stearns to RFC defaulted or became delinquent.  These loan defaults, in turn, led to significant investor losses.  In selling the RMBSs to investors, RFC made required disclosures to the Securities and Exchange Commission (SEC) and also made representations and warranties to investors.  When the RMBSs failed, investors, insurers, and other interested parties filed lawsuits against RFC for selling faulty investments.  RFC alleges it was exposed to "billions of dollars" in liability.  Id. ¶¶ 37-39, 45.  In the ensuing litigation, investors and their insurers discovered that many of the loans underlying their investments had significant underwriting problems.  See, e.g., id. ¶¶ 59, 62, 64.  The paperwork for many loans was either incomplete or included inaccurate information about key aspects of the loans, such as borrower income, loan-to-value ratios, and property values.  The loans also defaulted at higher than normal rates.  See id. ¶¶ 40, 62.

In May 2012, RFC declared bankruptcy in the Bankruptcy Court for the Southern District

of New York. The dozens of lawsuits against RFC involved a balance of more than $100 billion in original loan principal. And because RFC extended a promise to repurchase faulty loans and investments as part of its offerings, RFC had already spent millions of dollars repurchasing investments and loans. Id. ¶ 69. After RFC declared bankruptcy, investors and other interested parties filed hundreds of proofs of claim. Id. ¶ 71. Ultimately, the bankruptcy court approved a global settlement of over $10 billion to resolve the claims against RFC. The settlement assigned the rights and interests of RFC to the ResCap Liquidating Trust. Id. ¶¶ 14, 75.

After the bankruptcy settlement took effect in December 2013, RFC filed dozens of actions against the lenders from whom it had purchased residential mortgage loans, including Stearns. RFC has alleged a breach of the Client Contract and incorporated Client Guide. RFC has also alleged a claim for indemnification.

## III. DISCUSSION

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted). The complaint need not allege facts with "heightened" specificity, but it must include enough facts to move claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009). Also, the court may not consider matters outside the pleadings in connection with a Rule 12(b)(6) motion, but "documents necessarily embraced by the complaint are not matters outside the pleading[s]." Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

**B. Stearns' Asserted Grounds for Dismissal**

RFC's Amended Complaint in this action is identical to those in the RFC cases cited above except for variations for the named party and the loans at issue. Similarly, no argument raised in the present motion is unique. Given the commonality of both the claims and defenses, the pending motion is addressed with much of the same language in this Court's ruling in the previous cases.

**1. Specificity/Plausibility**

Stearns argues RFC has failed to state plausible claims for breach of contract and indemnification. Essentially, Stearns argues RFC has made allegations about the "bulk" sale of loans, but not about the individual transactions at issue. In the Amended Complaint, RFC identifies the total number of loans sold by Stearns and then alleges that some unidentified portion of these loans violated the Client Contract. See, e.g., Am. Compl. ¶ 38 (alleging the loans as a whole failed to comply with representations and warranties). These allegations are insufficient, Stearns argues, because RFC has not identified which loans are in breach and how these loans breach specific representations or warranties. Similarly, Stearns argues RFC has not sufficiently alleged damages because it has not identified which loans caused which RMBSs to fail, and how the loans directly translated into liability for RFC. As a result, Stearns contends RFC's pleadings make it impossible for them to meaningfully investigate RFC's claims or

evaluate their own exposure to liability.

Judges in this district have disagreed to some extent about whether loan-by-loan allegations are necessary in cases involving hundreds or thousands of loans. Compare Residential Funding Co., LLC v. Mortg. Access Corp., No. 13-3499, 2014 WL 3577403, at *3 (D. Minn. July 21, 2014) (Doty, J.) (finding loan-by-loan allegations not necessary to state claim), with Residential Funding Co., LLC v. Embrace Home Loans, Inc., --- F. Supp. 2d ---- , 2014 WL 2766114, at *5-6 (D. Minn. June 18, 2014) (Magnuson, J.) (requiring "more factual specificity" and dismissing claims without prejudice). Other federal district courts have generally tolerated complaints that do not parse through voluminous re-sold loans. See, e.g., Ace Sec. Corp. Home Equity Loan Trust v. DB Structured Prods., Inc., --- F. Supp. 2d ----, 2014 WL 1116758, at *12-13 (S.D.N.Y. Mar. 20, 2014). In Ace, the court—relying on several similar cases—held that plausible claims about bulk loan sales did not require specific allegations about each loan at issue. Id. at 13 (citations omitted).

RFC will not be required to plead with loan-by-loan specificity in the case at issue here. Requiring such specificity in cases involving hundreds or thousands of loans contravenes the requirement of pleading a "short and plain statement" of claims. See Fed. R. Civ. P. 8(a)(2). Ace specifically held that individual loan allegations were not necessary at the motion to dismiss stage of the case, though loan-specific proof would be required in later stages. Ace, 2014 WL 1116758, at 13. Other courts addressing high-volume loan sales have similarly rejected a need for loan-by-loan allegations. See, e.g., Deutsche Alt-A Sec. Mortg. Loan Trust v. DB Structured Prods., Inc., 958 F. Supp. 2d 488, 497 & n.4 (S.D.N.Y. 2013); Ace Sec. Corp. v. DB Structured Prods., Inc., 965 N.Y.S.2d 844, 850 (N.Y. Sup. Ct. 2013), rev'd on other grounds, 112 A.D.3d

522.

Stearns unpersuasively argues specific loan allegations are necessary to give them fair notice. Unlike in securities cases involving many thousands of pooled (and thus difficult to trace) loans, the complaints in this case address smaller sets of individually-identified loans. Although comparing the sale of loans to the sale of physical goods somewhat over-simplifies the facts, if a buyer sued a manufacturer for selling a large number of goods with an unusually high defect rate, federal pleading standards would not necessarily require the buyer to identify in the complaint every individual product that had failed. Here, RFC alleges Stearns served as the primary underwriter for the loans, and the complaints have at least identified the loans potentially at issue. At this stage, Stearns has sufficient knowledge to evaluate their liability, and discovery will bring the necessary focus to specific loans.

In addition to stating sufficiently specific allegations, RFC has narrowly stated plausible claims. RFC alleges Stearns' liability stems from their failure to properly underwrite the mortgage loans at issue. The higher than normal delinquency and default rates of Stearns' loans plausibly demonstrate a failure in underwriting procedures. Supporting this inference, RFC alleges that investigations conducted by the loan trusts and securities investors confirmed the defective nature of the loans. And as part of RFC's bankruptcy, parties filed numerous proofs of claim documenting defective loans. The bankruptcy court also approved a settlement of over $10 billion against RFC, which suggests the investments derived from faulty loans. Together, these allegations allow the Court to reasonably infer that at least some portion of the loans sold to RFC by Stearns violated the terms of the Client Contract. Although RFC has not specifically traced the loans at issue to the liability it faced from investors, it has sufficiently alleged a

connection for pleading purposes. Evaluating which specific loans exposed RFC to what amount of liability will follow in due course.

**2. Statute of Limitations - Breach of Contract**

Stearns argues RFC's claims are untimely under the six year statute of limitations for breach of contract. Under Minnesota law, the statute of limitations for a breach of contract begins running upon the alleged breach, regardless of when the breach is discovered. See Minn. Stat. § 541.05, subd. 1; Hempel v. Creek House Trust, 743 N.W.2d 305, 311-12 (Minn. Ct. App. 2007). Because RFC alleges Stearns sold the loans in an initially-defective condition, Stearns argues the statute of limitation began running when RFC purchased each individual loan. On that basis, Stearns argues RFC cannot pursue liability for any loans sold before December 15, 2007, which is six years before RFC initiated the present action.[2]

RFC argues the statute of limitations does not bar its claims for two reasons. First, RFC argues § 108(a) of the United States Bankruptcy Code extended the statute of limitations. Under § 108(a), if a debtor enters bankruptcy while holding a timely legal claim, the claim remains valid and may be filed by a trustee or debtor in possession up to two years after the bankruptcy court enters the order for relief. 11 U.S.C. § 108(a); see Johnson v. First Nat. Bank of Montevideo, Minn., 719 F.2d 270, 278 n.11 (8th Cir. 1983) (holding that a debtor in possession has the same rights as a trustee under § 108(a)). In this case, RFC argues, the Bankruptcy Court issued the order for relief on May 14, 2012, allowing RFC to seek damages for at least the loans sold on or after May 14, 2006.

Second, although RFC has conceded a cutoff date of May 14, 2006, for its breach of

---

[2] RFC served Stearns on December 16, 2013 [Docket. No. 9].

contract claims, RFC does not waive its claims related to earlier sales, and argues those claims are timely under a "continuing obligation" theory. RFC argued that under the terms of the Client Guide, Stearns had a continuing obligation to notify RFC about any loan deficiencies or defects. Because Stearns underwrote the loans, RFC argues the Court may reasonably infer Stearns knew or learned about loan problems but failed to inform RFC. Stearns' failures to notify, RFC argues, constituted continuing breaches of contract and gave rise to claims which are not time-barred.

The bankruptcy proceedings extended the statute of limitations. In their replies, Stearns essentially concedes the application of § 108(a), and further concedes RFC correctly determined the new "cutoff" date for liability. Given Stearns' concession and the established law, RFC has stated timely claims for all loans sold after May 14, 2006.

Whether RFC may pursue older claims based on its "continuing obligation" theory of liability is a closer call. The Client Guide, using fairly general language, obligates Stearns to notify RFC of any potential Event of Default. RFC alleges Stearns had primary underwriting responsibility, meaning Stearns collected and verified borrower information, evaluated appraisals, and conducted other diligence reviews. From these allegations, it is relatively plausible to infer Stearns, at least in some cases, knew about deficient or improperly high-risk loans at or after the time of sale. Accordingly, RFC's breach of contract claims as to the loans sold before May 14, 2006, will not be dismissed at this time. However, Stearns may raise the issue of these loans at a later time. If RFC is unable to demonstrate violations of a legally-sound continuing obligation, its claims as to these loans will be dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that, Defendant Stearns Lending, Inc.'s Motion to Dismiss [Docket No. 37] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 22, 2014.